UNPUBLISHED ORDER
Not to be cited per Circuit Rule 53

# United States Court of Appeals

For the Seventh Circuit
Chicago, Illinois 60604

Argued December 2, 2004
Decided January 4, 2006

Before

Hon. JOHN L. COFFEY, *Circuit Judge*

Hon. KENNETH F. RIPPLE, *Circuit Judge*

Hon. DANIEL A. MANION, *Circuit Judge*

| | |
|---|---|
| No. 04-2593 | Appeal from the United States District Court for the Northern District of Illinois, Eastern Division |
| CHERYL BAGBY, *Plaintiff-Appellant,* | |
| v. | No. 03 C 2828 |
| EXPERIAN INFORMATION SOLUTIONS, INC., *Defendant-Appellee.* | Matthew P. Kennelly, *Judge.* |

## ORDER

In April of 2003, Cheryl Bagby filed a complaint against Experian Information Solutions, Inc. ("Experian"), alleging that Experian willfully and negligently violated the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.*, by failing to conduct a reasonable investigation into disputed information contained in her credit report. The district court granted summary judgment in favor of Experian, finding that Experian performed a reasonable investigation to determine whether the disputed information on Bagby's credit report was false and that Bagby did not suffer any damages as a result of Experian's alleged misconduct. We affirm.

FILED

JAN 26 2006

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

## I. BACKGROUND

In 1996, Bagby's mother, Kathy Goodrich, opened a Discover credit card account in her daughter's name and gave it to her to use while in college. Bagby used the card throughout her collegiate years and made regular payments on the Discover account's balance. While Bagby was using the card, her mother was also incurring charges on the same card. Bagby was aware of her mother's activities, and both women continued to use and make payments on the card until 2002. According to Bagby, she stopped using the Discover card in 2002 but continued to make payments on the balance that she and her mother had incurred.

In February of 2001, while Bagby was in the process of buying a home, Home Bank Mortgage Corporation called her to inquire about various accounts listed on her credit report. None of the account charges were in arrears; however, the number of open accounts had prompted an investigation by Home Bank. After the inquiries from Home Bank, in March of 2001, Bagby ordered a copy of her credit report from a credit reporting agency. She discovered several active accounts in her name that she did not recognize, including accounts with Sears and Discover. According to Bagby, although she knew of the Discover account, she was not aware that her mother had opened the account in Bagby's name rather than in her mother's name. After receiving her credit report, she immediately closed the Sears account and continued paying the balance on the Discover account, even though she maintained that most of the charges had been incurred by her mother.[1]

Bagby ordered a second credit report in September of 2002. According to Bagby, after receiving this second report, she learned that she could dispute items listed on her report. In November of 2002, Bagby wrote a letter to Experian, a credit reporting agency, explaining that several of the accounts on her credit report had been opened by her mother without Bagby's consent. On November 12, 2002, the date Experian received Bagby's letter, Experian was reporting the Sears account as closed and "Paid/Never late" and the Discover account as "Open/Never late." As acknowledged by Bagby, neither the Sears nor Discover account had ever been identified by Experian as a "potentially negative item" on her credit report.

After receiving Bagby's letter, a fraud department representative reviewed the materials sent by Bagby and generated a "Consumer Dispute Verification" form ("CDV"). The CDV, which included Bagby's full name, social security number, date of birth, and current address, was sent to the disputed creditors on November 19, 2002. The CDV briefly explained the nature of Bagby's dispute, informing the

---

[1] During her deposition, Bagby admitted that she had taken a cash withdrawal in the amount of $400 from her Discover account sometime in 2002. According to Bagby, that was the last charge she incurred on the Discover card.



2

FILED
JAN 9 2006
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

creditors that Bagby was claiming "true identify fraud" due to the fraudulent opening of several of her accounts, and asked the creditors to investigate and verify their account information with the information provided by Experian. As a result of Experian's investigation, several of the disputed accounts were deleted from Bagby's credit report.[2] However, both Sears and Discover responded that the personal information on the CDV matched the information in their records and was, as far as they could discern, accurate as reported. On December 12, 2002, Experian notified Bagby of the results of its investigation, including its refusal to delete the Sears and Discover accounts from her credit report. Experian also sent her an updated copy of her credit report, which listed the accounts that had been deleted pursuant to her request and Experian's subsequent investigation. Experian also encouraged Bagby to contact Sears and Discover personally if she still suspected fraud. Despite Experian's recommendation, Bagby never contacted Sears or Discover, and she had no further contact with Experian prior to filing this lawsuit.

In May of 2003, Bagby filed a lawsuit against Experian, Sears, and Discover,[3] alleging that Experian had willfully and negligently violated the Fair Credit Reporting Act ("FCRA") by reporting inaccurate information on her credit report and by failing to conduct a reasonable and adequate investigation into disputed accounts after she brought the accounts to Experian's attention. She also asserted a defamation claim, alleging that Experian had defamed her when it reported that she had opened the Discover and Sears accounts in her own name and incurred the account balances on the respective cards.

Bagby claimed that as a result of Experian's conduct, she suffered out-of-pocket expenses in excess of $3000, including the money she spent obtaining two credit reports and paying off the balances on the Discover and Sears accounts. She also claimed that she suffered emotional distress in connection with her efforts to correct the errors in her credit report. In her deposition, Bagby testified that she "was really upset" when she found out her mother opened the accounts in her name without her consent and that her relationship with her fiancé suffered as a result. She stated that she gets "stressed" because she is required to speak with creditors

---

[2] Bagby disputed a total of eight accounts listed on her credit report. Of the six additional accounts that she disputed, two of the accounts were deleted after Experian received the creditors' responses, one account was deleted when the creditor did not respond within the statutorily-allotted time limit, one account was no longer being reported when the creditor responded to Experian's inquiry, and two accounts remained open after they were verified by the respective creditors. None of these six accounts is at issue in this case.

[3] Bagby voluntarily dismissed her claims against Discover and accepted an offer of judgment from Sears, leaving only her claims against Experian.

FILED
JAN 26 2006
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

when she applies for credit,[4] and that this stress sometimes manifests itself in the form of tension headaches.

On June 7, 2004, the district court granted Experian's motion for summary judgment, finding that Experian's investigation into the disputed accounts was reasonable and that Bagby did not suffer any damages as a result of Experian's conduct. On June 23, 2004, Bagby filed a timely notice of appeal.

## II. DISCUSSION

Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). We review the district court's grant of summary judgment *de novo* to determine whether, viewing the facts in the light most favorable to Bagby, there remains a material issue of fact for trial. *Sarver v. Experian Solutions*, 390 F.3d 969, 970 (7th Cir. 2004); *Patterson v. Avery Dennison Corp.*, 281 F.3d 676, 679 (7th Cir. 2002).

The FCRA was enacted to protect consumers from the transmission of inaccurate information. *Kates v. Croker National Bank*, 776 F.2d 1396, 1397 (9th Cir. 1995). Under the FCRA, when a consumer credit reporting agency prepares a consumer credit report, it is required to "follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b). "Once a consumer report exists, [the FCRA] triggers various duties on the part of a reporting agency, including the obligation to reinvestigate when a consumer contends that [her] consumer report is inaccurate or incomplete." *Ruffin-Thompkins v. Experian Info. Solutions*, 422 F.3d 603, 607 (7th Cir. 2005) (quoting *Wantz v. Experian Info. Solutions*, 386 F.3d 829, 832 (7th Cir. 2004)); 15 U.S.C. § 1681i(a). A credit reporting agency that negligently violates any duty imposed by the FCRA is potentially liable for "actual damages," costs, and attorneys fees. 15 U.S.C. §§ 1681n, 1681o. If a credit reporting agency willfully violates the FCRA, punitive damages may be awarded. 15 U.S.C. §1681n.

In her appeal, Bagby argues that the district court's grant of summary judgment was improper because Experian willfully and negligently violated §1681i

---

[4] Bagby asked the credit reporting agencies, including Experian, to put a "fraud alert" on her credit report, a safeguard that alerts potential creditors that they should not issue credit in her name unless they first contact Bagby and receive her verbal consent to open an account.

4

of the FCRA by failing to perform a reasonable reinvestigation into the accuracy of the Sears and Discover accounts after she notified them that she had been the victim of identity fraud.[5] Specifically, she contends that it was unreasonable for Experian to rely solely on the information provided by Sears and Discover in their responses to Experian's CDVs without further investigating her dispute. Although courts are to focus on the reasonableness of a credit reporting agency's reinvestigation in determining whether the agency violated the FCRA, as we recently highlighted in *Ruffin-Thompkins v. Experian Information Solutions*, the reasonableness inquiry is unnecessary until the plaintiff has "show[n] that she 'suffered damages as a result of the inaccurate information.'" 422 F.3d at 608 (quoting *Sarver*, 390 F.3d at 970); *see also Wantz*, 386 F.3d at 832 ("It is the plaintiff's burden to establish that [s]he is entitled to damages.") (citation omitted). Thus, rather than delving into a reasonableness inquiry before one is necessary, we begin our analysis with damages.

In order to prevail on her claims, Bagby must not only present evidence of damages, she must also establish that she suffered damages as a result of Experian's conduct in reinvestigating the alleged inaccuracies in her credit report. *Sarver*, 390 F.3d at 971. "Without a causal relation between the violation of the statute and the loss of credit, or some other harm, a plaintiff cannot obtain an award of 'actual damages.'" *Crabill v. Trans Union, L.L.C.*, 259 F.3d 662, 664 (7th Cir. 2001) (citations omitted). Under § 1681i(a), Experian must be made aware of an inaccuracy before it has a duty to reinvestigate. *Sarver*, 390 F.3d at 971; *see also Ruffin-Thompkins*, 422 F.3d at 610. Thus, Experian's window of potential liability did not open until November of 2002, the date Experian received Bagby's dispute letter.

Bagby has not alleged that she was ever denied credit as a result of the Discover and Sears accounts appearing on her credit report. Instead, she claims that she suffered actual, pecuniary damages in having to pay off the balances on these two accounts. Bagby argues that she would not have paid the balances but for Experian's refusal to delete them from her credit report. Initially, this argument strikes us as misplaced. The balances on the Discover and Sears accounts were incurred as a result of charges made by Bagby and her mother, in the case of the Discover account, and as a result of the alleged identify theft, in the case of the Sears account. None of the charges were incurred as a result of something

---

[5] At the trial court, Bagby also asserted a claim that Experian violated § 1681e(b) of the FCRA, which obligates a credit reporting agency to "following reasonable procedures to assure maximum possible accuracy" of information contained in a consumer credit report. However, Bagby has not presented the issue to this court; thus, she has abandoned her claim under § 1681e(b). *See Luellen v. City of East Chicago*, 350 F.3d 604, 612 (7th Cir. 2003) (arguments not raised on appeal are waived); *Ruffin-Thompkins*, 422 F.3d at 607 n.1.

Experian did or did not do. Furthermore, the record belies Bagby's argument that she only paid the balances on the Discover and Sears accounts because Experian refused to delete them from her credit report. In her deposition, Bagby testified that she closed the Sears account and paid the balance "shortly after" she discovered it on her credit report in February of 2001. Prior to this time, she had not notified Experian of the inaccuracies in her credit report. In fact, according to her testimony, her first contact with Experian was not until twenty-one months later, in November of 2002. Consequently, because Experian was not aware of a problem with Bagby's credit report at the time that she paid off her Sears account, it cannot be held responsible for damages ensuing from her decision to pay the Sears' balance. *See Sarver*, 390 F.3d at 971. Similarly, in the case of the Discover account, Bagby testified in her deposition that she had been paying on the Discover account since 1996. Again, because she began making payments on the balance long before she notified Experian of the inaccuracies in her report, Experian's conduct could not have been the proximate cause of her damages.

Bagby also blames Experian for the out-of-pocket costs she incurred in obtaining two copies of her credit report. However, in her deposition, Bagby admitted that she purchased the copies of her credit report prior to informing Experian of her dispute. Thus, there is no causal link between Experian's alleged misconduct and this expense.

Bagby next argues that she is entitled to damages for emotional distress. She urges us to follow the Third Circuit's approach in FCRA cases, in which a plaintiff need not present evidence of emotional damages with a great degree of specificity. *See Philbin v. Trans Union Corp.*, 101 F.3d 957, 963 n. 3 (3d Cir. 1996). However, we have declined to follow this reasoning. *See Ruffin-Thompkins*, 422 F.3d at 609 (stating our disagreement with the Third Circuit's approach to emotional damages in FCRA cases). Instead, "[w]e have maintained a strict standard for a finding of emotional damage" because this type of harm is "'so easy to manufacture.'" *Sarver*, 390 F.3d at 971 (quoting *Aiello v. Providian Fin. Corp.*, 239 F.3d 876, 880 (7th Cir. 2001)). Where the plaintiff's own testimony is the only evidence of emotional damages, she must explain her injury "'in reasonable detail' and not rely on conclusory statements, unless the 'facts underlying the case are so inherently degrading that it would be reasonable to infer that a person would suffer emotional distress from the defendant's action.'" *Wantz*, 386 F.3d at 834 (citing *Denius v. Dunlap*, 330 F.3d 919, 929 (7th Cir. 2003)).

Bagby's allegations, that she "stress[es]," gets tension headaches, and clashes with her fiancé over her credit problems, are, at most, self-serving and conclusory statements about her emotional distress. *Id.; see also Ruffin-Thompkins*, 422 F.3d

at 607.[6] According to the record before us, Bagby did not seek any medical or psychological treatment for the emotional distress she claims resulted from Experian's actions. Moreover, she has failed to describe her emotional distress in "reasonable detail" or with any certainty, even going so far as to testify that she is "not sure" if Experian's reporting of the Sears and Discover accounts caused her emotional distress. *Wantz*, 386 F.3d at 834. Although Bagby argues that whether Experian's actions were inherently degrading or humiliating is a question of fact, she has failed to satisfy our "'high threshold for proof of damages for emotional distress.'" *Ruffin-Thompkins*, 422 F.3d at 610 (quoting *Aiello*, 239 F.3d at 880). As we have stressed before, damages are not presumed under the FCRA; rather, the consumer must affirmatively establish that she is entitled to damages. *Wantz*, 386 F.3d at 833. Since Bagby has failed to produce evidence of either out-of-pocket or emotional damages that can be attributed to Experian, she has not met her burden.

Bagby's remaining claim for damages is that she is entitled to statutory and punitive damages pursuant to § 1681n because Experian "willfully fail[ed] to comply with" the FCRA. 15 U.S.C. § 1681n. To act willfully under the FCRA, "a defendant must knowingly and intentionally violate the Act, and it 'must also be conscious that [its] act impinges on the rights of others.'" *Wantz*, 386 F.3d at 834 (quoting *Phillips v. Grendahl*, 312 F.3d 357, 368 (8th Cir. 2002)). To be awarded damages under § 1681n, Bagby must establish that she suffered actual compensatory damages or that she is entitled to punitive damages because Experian willfully failed to comply with the FCRA. *Crabill*, 259 F.3d 662. As we have just discussed, Bagby has not established that she suffered actual damages. *Id.* at 664 (to be awarded damages under § 1681n, plaintiff must establish that she suffered actual compensatory damages or that she is entitled to punitive damages). And, as we shall discuss briefly *infra*, she has failed to demonstrate that Experian negligently, let alone willfully, violated the FCRA by failing to conduct a reasonable reinvestigation. *See also Ruffin-Thompkins*, 422 F.3d at 610 ("because [plaintiff's] claim under the FCRA cannot survive, it follows, *a fortiori*, that the [c]ourt must deny her claim for punitive or statutory damages."). Therefore, Bagby is entitled to neither statutory nor punitive damages under the Act.

Although we have determined that Bagby failed to demonstrate that she was damaged by Experian's conduct, we briefly address the reasonableness of Experian's reinvestigation into Bagby's claims. Section 1681i(a) states:

---

[6] Bagby raises her claims of tension headaches and a conflict with her fiancé for the first time in this appeal. Since "[t]he well-established rule in this Circuit is that a plaintiff waives the right to argue an issue on appeal if she fails to raise the issue before a lower court," Bagby has waived these arguments. *See Doe v. Cunningham*, 30 F.3d 879, 885 (7th Cir. 1994) (finding that the appellate stage "is too late to specify portions of the record which may create an issue of material fact.").

FILED
JAN 2 6 2006
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

[I]f the completeness or accuracy of any item of information contained in a consumer's file at a consumer reporting agency is disputed by the consumer and the consumer notifies the agency directly . . . of such dispute, the agency shall, free of charge, conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate and record the current status of the disputed information, or delete the item from the file . . . before the end of the 30-day period beginning on the date on which the agency receives the notice of the dispute from the consumer . . . .

15 U.S.C. § 1681i(a)(1)(A). In *Henson v. CSC Credit Services*, we discussed the reasonable reinvestigation requirement of §1681i(a):

> Whether the credit reporting agency has a duty to go beyond the original source will depend, in part, on whether the consumer has alerted the reporting agency to the possibility that the source may be unreliable or the reporting agency itself knows or should know that the source is unreliable. The credit reporting agency's duty will also depend on the cost of verifying the accuracy of the source versus the possible harm inaccurately reported information may cause the consumer.

29 F.3d 280, 287 (7th Cir. 1994). Thus, pursuant to *Henson*, we examine two factors to determine whether Experian had a duty to go beyond the information it received from Sears and Discover in their responses to Experian's CDV forms: (1) whether Bagby informed Experian that Sears or Discover may have been unreliable sources or Experian knew or should have known the same; and (2) the cost to the credit reporting agency of verifying the accuracy of the information versus the possible harm the inaccurate information could have caused Bagby. *Id.* at 287.

When Experian received Bagby's dispute letter, it sent CDVs to all of the disputed creditors. Based on Experian's investigation, a number of the disputed accounts were deleted from Bagby's credit report. However, both Sears and Discover responded to Experian that the information on the CDV matched the information they had on Bagby's accounts, and, as a result, Experian refused to delete those two accounts from her credit report. Experian informed Bagby of the investigation results via an updated credit report and encouraged her to contact Sears and Discover personally if she suspected fraud. Despite this suggestion, Bagby did not contact Sears or Discover regarding her fraud allegations. She also failed to inform Experian that she believed Sears and Discover to be unreliable sources. In fact, she had no further contact with Experian, Sears, or Discover prior to filing this lawsuit. Given Bagby's failure to present evidence that Sears or Discover were unreliable sources, this is not a circumstance where a more in-depth

8

FILED
JAN 26 2006
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

investigation by Experian was warranted. *But see Cushman v. Trans Union Corp.*, 115 F.3d 220 (3d Cir. 1997) (finding that additional investigation by credit reporting agency was warranted after consumer alerted agency to unreliability of source); *Stevenson v. TRW Inc.*, 987 F.2d 288 (5th Cir. 1993) (same). Additionally, Bagby has not offered any evidence that Experian knew or should have known that the information provided in the CDVs was anything other than reliable. Although Experian conducted no further investigation beyond sending out the CDVs, we agree with the district court that its standard reinvestigation procedure was sufficient to satisfy its obligations under these circumstances.

Moreover, as to the second *Henson* inquiry, we conclude that the cost of verifying the accuracy of the information in the Sears and Discover CDV responses would have outweighed any harm that Bagby allegedly suffered as a result of the inaccurate information. Bagby contended during oral argument that Experian should have taken additional measures, such as hiring a handwriting expert, to verify the accuracy of the information regarding the Sears and Discover accounts. However, we agree with Experian that such measures would have been quite costly and unnecessary since Experian had no reason to doubt that the information it received from Sears or Discover was anything other than accurate and reliable. Because the two *Henson* factors weigh heavily in favor of Experian, we find that it had no duty to investigate beyond the CDV inquiry and that its actions complied with requirements of §1681i(a). Thus, even if Bagby could demonstrate that she was damaged as a result of Experian's conduct, we agree with the district court's alternative finding that Experian performed a reasonable reinvestigation after receiving notice from Bagby about potential inaccuracies in her credit report.[7]

### III. CONCLUSION

We AFFIRM the district court's grant of summary judgment in favor of Experian.

---

[7] Bagby also argues briefly that the trial court erred in granting summary judgment to Experian on her defamation claim. However, under the Act, "no consumer may bring any action or proceeding in the nature of defamation, invasion of privacy, or negligence with respect to the reporting of information against any consumer reporting agency based on information disclosed pursuant to [the Act] . . . except as to false information furnished with malice or willful intent to injure such consumer." 15 U.S.C. § 1681h. As we have concluded that Experian complied with the requirements of the FCRA, such compliance precludes a finding of malice or willful intent to injure Bagby. Therefore, Bagby's defamation claim also fails.

9